UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|                                                             ) | |
| vs.                                                       ) | CASE NO. 5:12-cr-0238-SLB |
|                                                             ) | |
| TRYROME TERRELL BYNUM,    ) | |
|                                                             ) | |
| Defendant.                                  ) | |

## MEMORANDUM OPINION

This case is before the court on filings by defendant Tryrome Terrell Bynum that the court has construed as motions to withdraw his guilty plea. (Doc. 46 and 58.)[1] The government has responded. (Doc. 72.) The court held a hearing on the motions on January 3, 2014. Upon consideration of the motions, the evidence presented at the hearing, arguments of counsel, and the relevant law, the court finds, for the reasons stated below, that defendant's motions to withdraw his guilty plea are due to be denied.

## FACTUAL BACKGROUND

On October 31, 2012, the government and defendant entered into a written plea agreement in which defendant agreed to plead guilty to one count charging Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base and Cocaine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). (Doc. 33.) The plea agreement, each page of which is initialed by defendant, acknowledges that in light of defendant's prior conviction, he faced penalties including imprisonment for not less than twenty years. (*Id*. at

---

[1]Reference to a document number, ("Doc. ___"), references to the number assigned each document as it is filed in the court's record.

2.) In exchange for pleading guilty, the government agreed, among other things, to recommend that defendant be awarded an appropriate reduction in offense level for acceptance of responsibility and that defendant be incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range as determined by the court. (*Id*. at 11-12.) In addition, upon the satisfaction of other conditions by defendant, the agreement also acknowledges the possibility that the government will file a motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines requesting downward departure in the calculation of the defendant's advisory Guideline sentence and seeking a sentence reduction below any applicable mandatory minimum sentence. (*Id.* at 10.) Defendant, his court-appointed counsel at the time (Michael Tewalt), and the attorney for the government all signed the agreement. (*Id.* at 19-20.)

On October 31, 2012, the same day the agreement was signed, the court held a hearing on defendant's change of plea. (*See* doc. 56.) During that hearing, the government stated for the record the pertinent terms of the plea agreement and defendant, under oath, acknowledged that the statements were complete and accurate to the best of his knowledge. (*Id*. at 6-7.) Defendant acknowledged that he and his attorney had discussed the Sentencing Guidelines ("the Guidelines") and that he was aware that the Guidelines and the plea agreement were not binding on the court. (*Id*. at 8.) The court stated during the plea colloquy that if the government did not file a motion to go below the Guideline range, defendant was facing a minimum sentence of 20 years without parole. (*Id*. at 9.) Defendant's counsel, Mr.

Tewalt, stated that he and defendant had met on several occasions and discussed how the plea agreement and any 5K1.1 motion filed by the government would affect defendant's case. (*Id.* at 10.) The court asked whether, other than the plea agreement, defendant had been promised anything or threatened in any way to induce him to enter a plea of guilty. (*Id.* at 12-13.) Defendant responded, "No." (*Id.* at 13.) The court asked if defendant understood that upon a plea of guilty he was facing, among other penalties, a custodial sentence of not less than twenty years, but not more than life. (*Id.* at 13-14.) Defendant responded, "Yes, ma'am." (*Id.* at 14.) The court read aloud Count One of the indictment, the count to which defendant was pleading guilty, which alleges that defendant conspired to distribute 280 grams or more of crack cocaine and five kilograms or more of a substance containing a detectable amount of cocaine hydrochloride. (*Id.* at 15-16.) The court explained what a conspiracy is and what the government would have to prove at trial in order for defendant to be found guilty. (*Id.* at 16-17.) The court then asked if defendant understood the charge against him in Count One and defendant responded, "Yes, ma'am." (*Id.* at 17-18.) The court also asked if defendant had had sufficient time to discuss the charge with his attorney and if he was satisfied with the work his attorney had done for him, and defendant responded, "Yes, ma'am." (*Id.* at 18.)

    At the end of the hearing, the court informed defendant that he was not required to enter a plea of guilty and that he was free to withdraw his plea of guilty at that time, and asked if he still desired to enter a plea of guilty to Count One. (*Id.* at 23.) Defendant responded, "Yes, ma'am," and the court accepted his plea of guilty. (*Id.*)

On February 14, 2013, the government recommended to the court by motion that defendant receive a sentence of 180 months, a 25% reduction from the mandatory minimum of 20 years that defendant was facing. (Doc. 39 (under seal) at 3.) The same day, defendant's attorney, Michael Tewalt, filed a sentencing memorandum arguing that 96 months would be an appropriate sentence for the court to impose. (Doc. 41 (under seal) at 1.)  On February 15, 2013, the day defendant was initially set for sentencing, all parties were in court, but the hearing was continued, as the government wanted to develop another matter that had come to its attention.

In his March 19, 2013 filing, defendant stated that he did not completely understand the potential result of engaging in a plea agreement, and that he therefore wished to withdraw his guilty plea. (Doc. 46 at 1.) He alleged the following: that his lawyer told him that since he had a prior conviction in 2003 that the conspiracy would "stick" on him; that his lawyer did not allow him to hear or view the audio and video evidence against him; that he was not guilty of any of the charges the government has him on; that during a March 2013 meeting with his lawyer, his lawyer was mad and screamed at him that he could not change his plea. (*Id.* at 1-2).

**1. The Hearing Before the Magistrate Judge**

On April 4, 2013,[2] an ex parte hearing was held in front of Honorable Harwell G. Davis, III, on the Motion to Withdraw Federal Public Defenders Office as Counsel of

---

[2]Although the transcript dates the hearing as April 4, 2012, (doc. 62 (under seal) at 1), it is obvious from the record that "2012" is a typographical error.

Record, (doc. 49), by defendant's attorney, Michael Tewalt (hereinafter "Tewalt"). (Doc. 62 (under seal).) Subsection A is a summary of Tewalt's version of the events as represented to the court. Subsection B is a summary of defendant's representations to the court.

### A. Tewalt's version of events

Tewalt met with defendant before defendant's September 12, 2012 arraignment. (*Id*. at 7.) Defendant described in "great detail" what he believed a video that the government later produced would show. (*Id.* at 13.) Tewalt received preliminary discovery from the government at the arraignment, reviewed it, and then met with defendant again the day after the arraignment. (*Id.* at 7.) They discussed the case, including "two key factors": defendant's prior drug conviction, and the purported testimony of a confidential informant, allegedly supported by video evidence. (*Id.* at 8.) Tewalt later observed a trial in which the confidential informant testified, and, according to Tewalt, the jury found the informant credible and found the defendant in that case guilty. (*Id.*)

In October, Tewalt met with defendant again, this time discussing "that if he were convicted that he was looking at a 20-year mandatory minimum based on his prior drug conviction." (*Id.* at 9.) They had a "lengthy conversation" in which Tewalt explained that based on his assessment of the evidence, including that from agents, the confidential informant, and the video, there was a "high probability" that defendant would be convicted if he went to trial. (*Id.*) Tewalt told him that the only way to avoid the twenty-year mandatory minimum (other than, presumably, chancing trial and winning) would be to get the government to file a 3553(e) motion. (*Id*.) They also discussed the Guidelines. (*Id.*)

In one of their initial meetings, defendant asked for a copy of all of the evidence and Tewalt told defendant that he was concerned that other people in custody would have access to it. (*Id*. at 13.) Defendant "indicated that that's okay." (*Id*.) Tewalt brought in still-shot images of the video and defendant was able to identify himself. (*Id*. at 14.) However, because bringing his computer into the detention center could be difficult, Tewalt did not show defendant the video. (*Id*.) Later, at an unspecified time, defendant again asked for a copy of the written evidence and Tewalt provided him one.[3] (*Id*.)

In October, 2012, Tewalt, defendant, and the government met for what would turn out to be, in Tewalt's opinion, a "great" 5K1.1 proffer session. (*Id*. at 10.) Prior to the plea hearing, Tewalt and defendant reviewed the plea agreement together and defendant signed it. (*Id*. at 11.) Defendant then entered a plea of guilty. (*Id*.) In December, Tewalt and defendant met with a U.S. probation officer and had an "excellent presentencing report investigation meeting." (*Id*. at 12.) Tewalt later left a copy of the presentence report with defendant and the next day "asked if there w[ere] any errors,[4] or problems, or concerns with it, and [defendant] indicated that there were not." (*Id*.)

---

[3]In a letter to the State Bar, Tewalt states that he reviewed the evidence with defendant on September 13, 2012, (Tewalt Letter to State Bar at 4), and defendant requested a copy of the discovery, but defendant agreed with Tewalt's advice that retaining a copy in jail would be too risky and defendant did not ask for them again, (*Id.* at 5). Tewalt states that defendant requested and was given a copy of the discovery documents at a meeting after the February 15, 2013 sentencing date. (*Id.* at 11.)

[4]Later on in the hearing, Tewalt said that defendant had not indicated to him "that [defendant] saw anything that was glaringly wrong with the factual basis or the history . . . ." (*Id*. at 16.)

Sometime after the sentencing hearing was continued, defendant contacted Tewalt and asked to meet with him. At this meeting, defendant informed his attorney of his belief that "15 years might as well be a life sentence, and he saw no benefit in going forward with this agreement." (*Id.* at 18.) Tewalt tried to explain that although the prosecution was recommending 15 years, the court had the discretion to sentence him to a much lower sentence, and that if defendant moved to withdraw his guilty plea, he could lose the advantages of his plea agreement and again be subject to a twenty-year mandatory minimum. (*Id*. at 18-20.) According to Tewalt, defendant's main concern was that "Count One is a conspiracy charge to sell or transfer 5 kilograms or more of cocaine," and defendant maintains that he did not deal in that quantity and was not in a conspiracy. (*Id*. at 20.) Tewalt explained to defendant that the elements of conspiracy are easy to meet, (*Id*. at 20 and 22), but Tewalt stated at the hearing that due to the stress that defendant was under, defendant probably did not comprehend one hundred percent of everything Tewalt explained to defendant, (*Id*. at 23).

**B. Defendant's version of events**

Defendant testified that he did not conspire with his alleged co-conspirators and did not sell them anything or talk to them about drugs. (*Id*. at 25.) He has seen the evidence Tewalt brought him, but he has not seen evidence showing that he and the confidential informant made a transaction. (*Id*. at 26.) Someone else was in the car with him (presumably during the events shown on the video). (*Id*.) Tewalt has been telling him that just because he has a prior felony, he can be convicted. (*Id*.) In explaining that he doubts the sufficiency of

the evidence he has seen against him, defendant said, "I feel like if you got me, I feel like you could show me some evidence." (*Id*. at 30.)

When Tewalt brought defendant the presentence investigation report, Tewalt told defendant to "see if [he could] find something . . . that don't look right." (*Id*. at 30.) Defendant took this to mean that he was supposed to make sure that other charges that might have been dismissed were not on it, or other things of that nature. (*Id*. at 30-31.) Tewalt did not explain anything about filing objections to the report, a possibility he learned of later in discussions with another inmate. (*Id*. at 31.)

He has consistently maintained to Tewalt that he is innocent. (*Id*.) Defendant stated that during the proffer session, defendant told lies[5] because the confidential informant was lying about him. (*Id*. at 31-32.) However, after the court asked him directly if everything he had told the agent was a lie, defendant attempted to reword what he had said, but did not form a complete sentence and began to stutter over his words.[6] (*Id*. at 32.) The court allowed Tewalt to withdraw from representing defendant and concluded the hearing. (*Id*. at 32-33.)

---

[5]In a later filing, defendant made a statement potentially referring to the information he gave in the proffer session: "I just don't want to send a [sic] innocent man to prison that I did no deal with." (Doc. 69 at 2.) However, this statement is ambiguous since defendant could be referring to people he named who were rumored to deal drugs but with whom he did not personally deal.

[6]Specifically, defendant said, "Not – I'm just saying – just – just – I'm just saying something – I'm just saying something just to – just to – to – [cut off.]" (*Id*. at 32.) At the January 3, 2014 hearing, after argument on this topic from defendant's counsel, this court agreed that what defendant said is ambiguous. In other words, he was not necessarily saying that he lied to federal agents.

The court appointed James L. O'Kelley to represent defendant. Mr. O'Kelley passed away, and the court appointed Jerry S. Barclay to represent defendant.

**2. The Present Motion and the Evidentiary Hearing**

Defendant filed a statement pro se on June 4, 2013 purporting to withdraw his guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(B). (Doc. 58.) As grounds for withdrawal he asserts the following: he never saw the indictment; he never received discovery;[7] he did not receive effective assistance of counsel; he was guided to omit facts at his allocution; he was lead to believe this offense (unspecified) was eligible for a probationary sentence.[8] (*Id*. at 1-2.) Other than listing these allegations, he does not attempt to argue why they form a "fair and just" reason to allow him to withdraw his plea. He also filed a statement pro se on December 12, 2013, in which he claims that he "made a mistake by saying guilty the first time under diress [sic] and threat . . . I haven't even seen any evidence[9] in my case." (Doc. 69 at 3.)

---

[7]Presumably, he is alleging he never received a copy of his discovery before pleading guilty. *See supra* note 3.

[8]Defendant does not specify who led him to believe the offense was eligible for a probation sentence. In his letter of defense to the state bar, Tewalt mentioned a discussion he had with defendant in which defendant suggested that they recommend time served. (Tewalt Letter to State Bar at 9.) Tewalt states that they discussed that the judge would likely find such a request unreasonable and be more inclined to grant the government's requested sentence. (*Id*.)

[9]In light of the overall story defendant has presented in this case, it is reasonable to assume that defendant means he has not seen any evidence *that would allow a jury to convict him of a conspiracy*.

9

On January 3, 2014, the court held a hearing on defendant's motion to withdraw his guilty plea. Defendant was asked to explain why he filed documents 46 and 58, and he provided the reasons summarized in subsection A.

**A. Summary of Defendant's testimony**

Defendant told Tewalt before pleading guilty that he had not conspired with his co-defendants. (Doc. 76 at 27.) Tewalt told him that because he had a prior conviction, the jury would find him guilty at trial. (*Id*. at 31 & 62.) During the plea colloquy, as the government was reciting the factual basis,[10] he told Tewalt that he was not guilty of what the government was saying and Tewalt told him not to worry about it. (*Id*. at 33-34.) From what Tewalt was telling him, he understood that a six year offer[11] was "still on the table." (*Id*. at 34-35.) He only found out later from his wife that Tewalt had mentioned something about fifteen years. (*Id*. at 36.)

Tewalt told him that the confidential informant against him was credible on the stand. (*Id*. at 62.) However, defendant was in jail with a person against whom the confidential informant had testified at trial, and eleven of the twelve charges against the man were

---

[10]The court interrupted the proceedings to allow defendant to speak to Tewalt. (Doc. 56 at 20.)

[11]In a letter to the State Bar, Tewalt stated that he requested a term of 96 months, but that, combined with a request for the Residential Drug Abuse Program ("RDAP") and the application of good time, "we hoped Mr. Bynum would only have to serve 6 years versus the 20 years." (Tewalt Letter to State Bar at 10.)  His testimony at the January 3, 2014, hearing on defendant's motion to withdraw his plea was in accord with the information he provided to the Bar. (Doc. 76 at 123-124.)

dropped. (*Id*. at 63.) Defendant asked to see the evidence and Tewalt brought him one piece of paper that had "a lot of things scribbled out on it."[12] (*Id*.)

He signed the plea agreement because the government represented to him that it would bring other charges against him if he did not and because of Tewalt's advice regarding his prior conviction. (*Id*. at 63-64.)

During the January 3, 2014, hearing the government explained what defendant was apparently alluding to when referencing "other charges" it could have brought. The government stated that it had an undisclosed informant who made a separate drug buy from defendant, but that buy was not put in the indictment because the government was unwilling to disclose the informant at that time. (*Id*. at 95.)

Upon questioning, defendant made certain admissions that are arguably in tension with his claims in document 58. He admitted that at his arraignment, he saw a piece of paper that probably was the indictment. (*Id*. at 36.) He admitted that he remembered a detention hearing (held September 12, 2012) during which the magistrate judge told him that he was facing not less than twenty years. (*Id*. at 44-45.) He also admitted that he remembered being told during the proffer session with the government that he was facing not less than twenty years. (*Id*. at 46-47.)

**B. Summary of Tewalt's testimony**

---

[12] In exhibit six to Tewalt's letter to the State Bar, the exhibit labeled "Discovery provided by United States Attorneys Office," is a single-page document matching this description.

11

Tewalt met with defendant approximately nine times prior to and including the day of defendant's change of plea. (*Id*. at 99-100, 115-16.) Prior to defendant's September 10, 2012, detention hearing, Tewalt informed defendant that he was facing a twenty year minimum mandatory sentence if he was found guilty. (*Id*. at 100-101, 105.) Tewalt never showed defendant the video evidence against him because it was difficult to bring a computer into the detention center and because defendant had already described what the video showed. (*Id*. at 106.) On September 13th, Tewalt discussed the Guidelines in detail with defendant. (*Id*. at 105.) They discussed the written statement from the confidential informant. (*Id*. at 107.) They discussed that even though the informant might be lying or exaggerating, the problem would be convincing a jury of that, and Tewalt had seen the informant testify on direct in a trial and the jury had convicted the defendant based in part on that testimony. (*Id*. at 107-08.) They also discussed the fact that while defendant does not have to testify, he is the only witness who could attempt to directly rebut the prosecution's evidence, and if defendant testified at trial, his prior conviction would be automatically admissible. (*Id*. at 112-13.) Tewalt told defendant that in his experience, when a jury hears that a defendant has a prior drug conviction, it is more inclined to disbelieve the defendant's testimony and credit the government's evidence against the defendant. (*Id*. at 113.)

After meeting with defendant on September 13th, Tewalt met several times with the government and requested: (1) that the government drop Count One, the conspiracy, in exchange for defendant pleading guilty to the other charges, or, if not, (2) that the

12

government reduce the amount of drugs attributable to defendant. (*Id*. at 109-10.) The government denied both requests. (*Id*. at 110.) At some point (Tewalt believed it to be after the Presentence Report was disclosed), Tewalt told defendant that the maximum reduction that the government would request would be fifty percent, making it a ten year sentence, and that he was going to ask for between six and eights years. (*Id*. at 123-124.)

## **FACTUAL FINDINGS**

"The good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea are issues for the trial court to decide." *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir 2006) (citations omitted). The court finds that defendant was shown the indictment against him prior to arraignment. In addition, the court read aloud the indictment against him at the plea colloquy. The court finds that while defendant never "received" the complete package of discovery provided by the government to Tewalt before pleading guilty, Tewalt ensured that defendant was well informed regarding the content of that discovery during their pre-colloquy meetings. In addition, the court finds credible Tewalt's statement in his letter to the State Bar that before defendant pleaded guilty, Tewalt and defendant agreed that defendant should not retain a copy of all discovery while in custody because it would be risky.

The court does not find credible defendant's assertion that he was guided by his attorney to misstate facts at the plea colloquy.

The court does not find it believable that defendant was lead to believe his offense was eligible for a probationary sentence. Defendant's sworn statements at the plea colloquy,

13

including that he discussed the Guidelines with his attorney and his acknowledgment that he was facing twenty years to life, undermine this assertion. Additionally, the court credits Tewalt's testimony that he discussed the Guidelines in detail with defendant on September 13, 2012.

## ANALYSIS

Although defendant purported to "hereby" withdraw his guilty plea in his June 4, 2013 filing, (doc. 58 at 1), "there is no absolute right to withdraw a guilty plea." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Once accepted by the court, a defendant may withdraw his plea before sentencing by showing a "fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). A court deciding whether defendant has made such a showing considers the totality of the circumstances surrounding the plea, including the following factors: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (citations omitted). "[T]he longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." *Id.* (citations omitted). In this case, defendant waited four and a half months from the date that he pleaded guilty until advising the court that he wanted to withdraw his plea. As the government notes, rather than being a "swift change of heart" indicating "that the plea was entered in haste and confusion," (doc. 72 at 2 (quoting *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801

14

(11th Cir. 1987) (citations omitted))), defendant's wish to withdraw apparently arose only after he learned that the government was recommending a sentence with which he was dissatisfied, (doc. 72 at 4).

In discussing close assistance of counsel in *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988), the court noted that "[a] defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty." *Id.* (citations omitted).

The court finds that defendant had close assistance of counsel.[13] Up to and including the plea colloquy, Tewalt met with defendant nine times, discussing the case fully. Mr. Tewalt performed research on the confidential informant against defendant, and met several times with the prosecution to argue in favor of a plea deal involving less severe charges. In sum, Tewalt worked hard for defendant. That Tewalt thought it best, apparently with defendant's consent, for defendant not to retain a copy of the discovery with him in jail,

---

[13]At the January 3, 2014 hearing, counsel for defendant argued that the attorney client privilege barred disclosure of any confidential communications between Tewalt and defendant. (Doc. 76 at 74-75, 80-81.) The court doubted that defendant could invoke the attorney client privilege while simultaneously attacking his attorney's conduct and advice as a basis for withdrawing his guilty plea. (*Id*. at 81-82.) The court now holds that defendant has waived the privilege with regard to the communications disclosed at the hearings and forming the subject of defendant's motion. *See United States v. Woodall*, 438 F.2d 1317, 1325-26, 1328 n.7 (5th Cir. 1971) (en banc) (holding that defendant who testifies as to part of a conversation relative to plea results waives the privilege, rejecting the notion that a defendant could claim his plea was based on faulty advice and while asserting the advice is privileged, and noting that "a claim of counsel misconduct would unseal the lawyer's lips so he could defend his reputation with the truth, despite any claim of privilege").

where other inmates would access to it, does not mean that Tewalt's assistance was not close. When Tewalt visited, defendant was able to review the documents in the discovery package. (*See* Tewalt Letter to State Bar at 5 ("[On September 13, 2012, Defendant] agreed that he did not want to risk [what other inmates could do with his discovery package] and did not ask for [a copy of the discovery] again. I told him I would have it with me in his case file every time I came back to visit with him.").) Tewalt, who was acting as defendant's lawyer, was familiar with the details of the discovery and was able to present an informed recommendation to defendant based on the evidence.

    The court finds that defendant's entry of a guilty plea was knowing and voluntary. The possibility that defendant misinterpreted the plea deal and his attorney's advice does not overcome the evidence tending to show that defendant knew the consequences of pleading guilty and did so voluntarily. Even had Tewalt's expressed "hope" that he could argue for a six to eight year sentence translated in defendant's mind into a proposition that the government was offering a deal involving a six to eight year sentence, defendant was confronted multiple times with clear statements that such was not the case. The plea agreement, each page of which defendant initialed, states that the government will, upon certain conditions being met, "request[]" a downward departure in the Guideline calculation and may "recommend" a sentence below the minimum mandatory sentence, but makes clear that "the Court will <u>not</u> <u>be</u> <u>bound</u> by the government's recommendation and may choose not to reduce the sentence at all." (Doc. 33 at 10-12) (emphasis in original). Nowhere does a

16

definite figure appear, and the agreement requires defendant to acknowledge that "NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE . . . ." (*Id.* at 19) (all caps in original). If defendant truly thought a specific sentence range was a part of the deal—and indeed, if it were, it would be the most important part of the deal—the court expects he would have sought a figure guaranteed in writing.

If the written plea agreement was not enough to clear up any potential misconception about the terms of the plea deal, the court did so personally in the plea colloquy. The court asked the government to state for the record the pertinent terms of the plea agreement. (Doc. 56 at 6.) The government discussed that, without substantial assistance from defendant, it would recommend "an appropriate reduction in the offense level for acceptance of responsibility" and that defendant receive a "low-end" sentence in the Guideline range.[14] (*Id.*) Notably absent in the pertinent terms was any mention of a specific figure that the government would recommend, much less that it would recommend six to eight years. Yet the defendant admitted that to the best of his knowledge, the government's statements were complete and accurate. (*Id.* at 7.) The court asked defendant, "Is there anything you need to add to those statements so I know everything you are relying upon in entering a plea of

---

[14]The court notes that Tewalt had discussed the Guidelines in detail with defendant, (doc. 76 at 105), and had given him a preliminary calculation, (doc. 62 (under seal) at 9). The court finds it improbable that any such calculation would have had a low end of six or eight years. The Presentence Report estimated the range—*not* factoring the minimum mandatory—to be 108 to 135 months, or 9 to 11.25 years. (Presentence Report dated Jan. 15, 2013 at 20 ¶ 81.)

17

guilty?" (*Id.*) Defendant replied, "No, ma'am." (*Id.*) "There is a strong presumption that statements made during the plea colloquy were true." *United States v. Oliver*, 522 F. App'x 525, 527 (11th Cir. 2013). If defendant truly believed that a six-year "offer" was "on the table" when he was pleading guilty, (*see* doc. 76 at 35), he likely would have said so at the colloquy, not four and a half months later when he discovered that the government was recommending fifteen years. The court finds that defendant knew that the plea deal did not involve a government recommendation of six years.

The court finds similarly with regard to defendant's understanding of the effect that his prior conviction would have on him at trial. Even had defendant summarily concluded that Tewalt's careful explanation of his case—the probability that defendant would need to rebut the government's evidence by testifying, the admissibility of defendant's prior conviction if he chose to testify, and the prejudicial effect that prior drug convictions tend to have on juries—meant that his prior conviction alone would permit a finding of guilty, the plea colloquy would have remedied defendant's misconception. In the plea colloquy, the court explained what the government would have to prove beyond a reasonable doubt in order for him to be found guilty by a jury. (Doc. 56 at 16-17.) Afterward, the court asked if defendant understood the charge against him in Count One and he responded, "Yes, ma'am." (*Id.* at 17-18.) The government also explained what it was prepared to prove at trial, (*id.* at 19-21), all of which would have been unnecessary if the government simply had to prove that defendant had a prior drug conviction. The government did not mention defendant's prior

18

drug conviction. The court asked defendant if the facts that the government was prepared to prove were substantially correct, and defendant responded, "Yes, ma'am." (*Id*. at 22.) The court finds that defendant did not enter his plea of guilty while operating under a faulty assumption about the law in this regard.

Defendant conceded at his plea colloquy that he understood the potential penalties of his sentence, (*id*. at 13-14), the court's authority to impose a sentence different than any recommended sentence, (*id*. at 8), and that he was satisfied with Tewalt's representation, (*id*. at 18). *See Brehm*, 442 F.3d at 1298-99 (noting similar concessions). Defendant's plea of guilty was knowing and voluntary.

Having decided that defendant has the close assistance of counsel and that his plea was knowing and voluntary, the court need not give particular attention to whether judicial resources would be conserved and whether the government would be prejudiced if the defendant were allowed to withdraw his plea. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). However, the court would note that allowing the defendant to withdraw his plea and proceed to trial would obviously require the expenditure, not conservation, of judicial resources.[15] There is also a real risk of prejudice to the government if defendant was allowed to withdraw his guilty plea, as noted by counsel for the government that "with the passage of time, people's memories fade. I do not know where all of these

---

[15]Although noting the obvious, this factor was not weighed or considered at all by the court in deciding defendant's motions to withdraw his guilty plea.

witnesses are now. I do not know what their state of mind would be about whether they would still be willing to testify against him." (Doc. 76 at 128.)

## CONCLUSION

Considering the totality of the circumstances surrounding its entry, the court finds that defendant has not shown a fair and just reason to allow him to withdraw his guilty plea. Therefore his motions to withdraw his guilty plea are due to be denied. An Order in accordance herewith will be entered simultaneously with this Memorandum Opinion.

Done this 22nd day of April, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE